IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

KENTORRE D. HALL                                                    PLAINTIFF

v.                                        CIVIL ACTION NO. 1:17-CV-42-HSO-JCG

UNITED STATES OF AMERICA, et al.                                    DEFENDANT

## REPORT AND RECOMMENDATION

BEFORE THE COURT is the Motion to Dismiss, or in the alternative,

Motion for Summary Judgment (ECF No. 29) filed by Defendants United States of

America and Melanie Rube,[1] and the Motion for Cross Summary Judgment filed by

Plaintiff Kentorre Hall (ECF No. 38). These motions are briefed. Hall, an inmate of

the Medical Center for Federal Prisoners in Springfield, Missouri, is proceeding *pro

se* and *in forma pauperis*. He asserts claims pursuant to the Federal Tort Claims

Act (FTCA), 28 U.S.C. §§ 2671, *et seq.*; 42 U.S.C. § 1983; the Americans with

Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12101, *et seq.*; the Rehabilitation Act of

1973 (RA), 29 U.S.C. § 701; and *Bivens v. Six Unknown Named Agents of the

Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

## BACKGROUND

On February 24, 2017, Hall commenced this action against numerous

defendants, challenging the medical treatment he received as a federal pretrial

detainee in the custody of the Pearl River County Jail. Plaintiff alleges that Rube is

liable under *Bivens* and the USA is liable under the FTCA and the RA. Hall, a

---

[1] Melanie Rube's first name was spelled incorrectly in the complaint.

quadriplegic since 2002, was arrested on December 17, 2013 for various drug and weapons charges (ECF No. 30). Because of the nature and seriousness of the charges, he was detained pretrial. However, the United States Marshal Service (USMS), Rube in particular, began preparing for his possible pretrial detention several months prior to his arrest. Rube determined that the Pearl River County Jail would be able to care for Hall if pretrial detention was ordered (ECF No. 30).

The USMS has an intergovernmental agreement (IGA) with the Pearl River County Jail. It provides that Pearl River "shall accept and provide for the secure custody, safekeeping, housing, subsistence and care of federal detainees in accordance with state and local laws, standards and procedures, or court orders applicable to the operations of the facility . . . ." (ECF No. 29-1). It requires Pearl River to comply with the mandatory standards of the American Correctional Association. The IGA also provides that the Federal Government "shall have access to the facility and to the federal detainees housed there," and that the Local Government will allow "periodic inspections of the facility" (ECF No. 29-1). With respect to medical services, the IGA states that Pearl River is responsible for medical treatment; however, it must submit requests for outside treatment for approval, as the Federal Government is responsible for the cost of outside medical treatment (ECF 29-1).

At the time of his arrest, Hall had a "Stage IV decubitus ulcer" on his buttocks (ECF No. 1, ECF No. 30). He also had an "in/out" catheter, which required another person to assist him with emptying his bladder several times a day (ECF

No. 30). According to Defendant David Kilgore, in order to eliminate the need for assistance, prevent bladder infections, lower the risk of infections generally, and promote healing by keeping the area dry, he had an indwelling (or Foley) catheter put in on December 19, 2013 (ECF No. 1-2, ECF No. 29-1). However, Hall's mother was opposed to an indwelling catheter, believing it would cause life-threatening infections (ECF No. 1, ECF No. 29-1). Hall was diagnosed with a urinary tract infection on January 2, 2014 (ECF No. 1-2). Despite this infection, doctors did not remove his catheter. His medical records indicate that he still had an indwelling catheter on January 21, 2014 and on March 16, 2014 (ECF No. 1-2).

Hall also had to contend with his ulcers while in the Pearl River County Jail. During a visit to the Highland Community Hospital on January 21, 2014 for a different purpose, his medical records include pictures of the stage IV ulcer that was present at the time of his arrest as well as a smaller stage II ulcer, but he was given a fair prognosis (ECF No. 1-2). On February 6, 2014, his records from Pearl River County Hospital indicate that his stage IV ulcer was much cleaner, and it was noted as showing improvement on February 13, 2014. On March 10, 2014, Hall had surgery to excise the stage IV ulcer (ECF No. 1-2).

In his complaint, Hall contends that Rube should be held liable under *Bivens* for her "blatant disregard of serious medical needs." He also contends that the United States is liable under the FTCA for the negligent acts of the USMS and under the RA for "discriminatory acts of failing to make reasonable accommodation for Plaintiff['s] disability." Closely related to these claims is his assertion that the

United States has violated his rights to Equal Protection and Due Process by the

"intentional restriction of medical services that are guaranteed to all other federal

detainee[s], who are without disability, and discrimination through the gross

treatment of a[ ] handicapped individual" (ECF No. 1). Hall's claims against the

other defendants are not presently at issue.

## DISCUSSION

Federal Rule of Civil Procedure 56(a) provides that summary judgment is

appropriate "if the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). "When the moving party has carried its burden under Rule 56(c), its

opponent must do more than simply show that there is some metaphysical doubt as

to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

574, 586 (1986). "[T]he nonmovant must go beyond the pleadings and designate

specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air

Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S.

317, 325 (1986)).

"A genuine dispute of material fact means that 'evidence is such that a

reasonable jury could return a verdict for the nonmoving party.'" *Royal v. CCC & R

Tres Arboles, LLC*, 736 F.3d 396, 400 (5th Cir. 2013) (quoting *Anderson v. Liberty

Lobby, Inc.*, 477 U.S. 242, 248 (1986)). If evidence presented by the nonmovant "'is

merely colorable, or is not significantly probative,' summary judgement is

appropriate." *Anderson*, 477 U.S. at 249. In deciding whether summary judgment is

appropriate, the Court views the evidence and inferences in the light most favorable

to the nonmoving party. *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir.

2010).

I.   *Bivens* Claim against Rube

Hall seeks one million dollars in compensatory damages and two million

dollars in punitive damages against Rube for "the infliction of 'Cruel and Unusual

Punishment' in violation of the Eighth Amendment, pursuant Title 28 U.S.C. § 1331

and Title 42 U.S.C. § 1983—*Bivens*" (ECF No. 1).[2] Hall's claim against Rube must

fail for three reasons: (1) the statute of limitations expired prior to the filing of the

complaint; (2) Hall has not shown that Rube was deliberately indifferent; (3) and

Rube is entitled to qualified immunity.

A.  *Statute of Limitations*

"A *Bivens* action is controlled by the applicable state statute of limitations."

*Brown v. NationsBank Corp.*, 188 F.3d 579, 590 (5th Cir. 1999) (citing *Alford v.*

*United States*, 693 F.2d 498, 499 (5th Cir. 1982)). Mississippi has a three year

statute of limitation for personal injury claims. *Edmonds v. Oktibbeha Cty.*, 675

F.3d 911, 916 (5th Cir. 2012). Hall (through his mother) had complaints about the

indwelling catheter from the moment it was ordered (ECF 1, ECF No. 29-1). Hall

developed a UTI, which he contends was caused by the indwelling catheter, by

---

[2] As the Defendants point out, because Hall was a pre-trial detainee at the time of these events, this
action is governed by the Fifth Amendment's Due Process Clause, not the Eighth Amendment. *Bell
v. Wolfish*, 441 U.S. 520 (1979). However, the standard is the same. *City of Revere v. Massachusetts
General Hosp.*, 463 U.S. 239, 244 (1983).

January 2, 2014. Because Hall did not file his complaint until February 24, 2017, this claim is time barred.

In his complaint, Hall did not allege that Rube was responsible for his ulcers; however, his Sur-Reply to the Defendants' summary judgment motion asserts that "Rube's actions or omissions [in authorizing the catheter and in placing him in the facility] were but a first step in multiple failures leading to the ensuing injuries' manifestations" (ECF No. 50). Even considering that Rube could be liable for the deterioration of Hall's ulcers, Hall alleges that his stage IV ulcer had deteriorated to the point of needing surgery on January 21, 2014 (ECF No. 1). The new stage II ulcer was also present at this time (ECF No. 1-2). Therefore, his claims are still barred.

Hall's arguments that he filed his claim within the statute of limitations or that the statute of limitations did not begin to run until later are unpersuasive. He first argues that he filed an FTCA administrative claim on February 4, 2016 (ECF No. 37). Hall's FTCA claim is against the United States; the filing of an FTCA administrative claim has no bearing on this *Bivens* claim. Hall next argues that his injuries were latent and undiscoverable until he obtained his medical records in March 2015. However, his medical records indicate that after he was diagnosed with the urinary tract infection, Hall received a written copy of the discharge instructions, the discharge instructions were reviewed with him, and his "understanding was verbalized" (ECF No. 1-2). The first line of the discharge instructions for the urinary tract infection states "[y]ou have been diagnosed with a

lower urinary tract infection" (ECF No. 1-2). Therefore, Hall knew of his injury in January of 2014.

With respect to his ulcers, Hall quotes his medical records that as of February 26, 2014, he had been receiving treatment for his stage IV ulcer for six months to a year (ECF No. 1). Hall was aware of the Stage IV ulcer and the problem it presented more than three years before he filed this complaint. Hall also alleges that the continuous treatment doctrine applies to his case. However, the Eleventh Circuit case he cites rejected the continuous treatment doctrine and concluded that the plaintiff's claims were time barred. *McCullough v. United States*, 607 F.3d 1355 (11th Cir. 2010). Further, the continuous treatment doctrine is generally applicable to claims of medical malpractice, which is not the claim here. Rube did not provide medical treatment. Therefore, Hall's *Bivens* claim against Rube is time barred.

### B. Deliberate Indifference

The extent of Hall's claim against Rube is that she showed blatant disregard for his medical needs. In order to proceed on a *Bivens* claim, a plaintiff "must, at minimum, allege deliberate indifference to a substantial risk of serious harm." *Toledo v. Bureau of Prisons*, 238 Fed. App'x 10, 11 (5th Cir. 2007) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). The standard is whether the defendant "knew of and disregarded an excessive risk" to an inmate's serious medical needs. *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 755 (5th Cir. 2001). Negligence does not constitute deliberate indifference, nor does the prisoner's disagreement with the treatment received. *Gibbs v.*

*Grimmette*, 254 F.3d 545, 549 (5th Cir. 2001) (citing *Williams v. Treen*, 671 F.2d 892, 901 (5th Cir. 1982); *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997).

The deliberate indifference standard is "an extremely high standard to meet." *Domino*, 239 F.3d at 756. The "failure to alleviate a significant risk that an official should have perceived, but did not" is insufficient to show deliberate indifference. *Farmer*, 511 U.S. at 838. Instead, the official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference." *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995) (citing *Mendoza v. Lynaugh*, 989 F.2d 191, 193-95 (5th Cir. 1993)). Finally, the "supervisory federal officials . . . must . . . either be involved personally in the alleged deprivation, or must have implemented a policy 'so deficient that the policy itself acts as a deprivation of constitutional rights.'" *Toledo*, 238 Fed. App'x at 11 (quoting *Cronn v. Buffington*, 150 F.3d 538, 544 (5th Cir. 1998)).

Ultimately, Rube cannot be liable for the actions of any Pearl River County Jail employees or for any doctors or nurses who treated Hall. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) ("vicarious liability is inapplicable to *Bivens* and § 1983 suits"). Hall contends that even so, Rube had a separate, undelegated duty to him (ECF No. 37). Rube has not breached that duty. With respect to the selection of the type of catheter, Hall contends that because the IGA requires the Federal Government to approve outside medical treatment, the catheter should not have been used (ECF

No. 37). However, Rube "has no authority to make any medical decisions regarding pretrial detainees" (ECF No. 30). Rube was given valid medical reasons for using the indwelling catheter instead of Hall's preferred catheter (ECF No. 29-1), and authorizing the cost of the procedure was not deliberate indifference to Hall's medical needs. Additionally, even after Hall's urinary tract infection, none of the medical professionals providing him treatment saw fit to remove the catheter (ECF No. 1-2).

Hall's argument that his placement at the Pearl River County Jail showed Rube's deliberate indifference is also without merit. The IGA in place provided that Pearl River County Jail was responsible for Hall's medical treatment. Although the Federal Government had a right to inspect the facility, Rube was not responsible for supervising the employees or making the day to day decisions regarding Hall's care. Furthermore, the fact that Hall received treatment, including surgery, for his stage IV ulcer indicates that Rube was not deliberately indifferent to his medical needs.

### C.  Qualified Immunity

Because Hall had not shown that Rube was deliberately indifferent to his medical needs, his claim must fail on the merits, but it also demonstrates that Rube is entitled to qualified immunity. Qualified immunity protects officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). A government official is entitled to immunity

from suit unless (1) a plaintiff has made allegations sufficient to show a violation of

a constitutional right, and (2) the right at issue was "clearly established" at the time

of the official's alleged misconduct. *Pearson*, 555 U.S. at 232 (citing *Saucier v. Katz*,

533 U.S. 194, 201 (2001)). These two prongs need not be addressed in a particular

order, and failure to satisfy either may be dispositive. *Lytle v. Bexar Cty., Tex.*, 560

F.3d 404, 409 (5th Cir. 2009) (citing *Pearson*, 555 U.S. at 236). Hall has not shown

that Rube violated his constitutional rights.

II.    FTCA Claim against the USA

Hall also contends that the USA is liable in the amount of five million dollars

for "personal injury effected by the negligent acts or omissions of employee[s] of the

United States" (ECF No. 1). The FTCA waives the Federal Government's sovereign

immunity with regard to suits in tort stemming from the conduct of a federal

employee acting within the scope of employment. 28 U.S.C. § 1346. However, the

United States contends that it is not liable under the FTCA because two exceptions

to this waiver of immunity exist: the independent contractor exception and the

discretionary function exception (ECF No. 30).

Under the independent contractor exception, the Federal Government is not

liable for "negligent acts committed by its independent contractors." *Jasper v.

FEMA*, 414 Fed. App'x 649, 651 (5th Cir. 2011). The employees of a county jail are

not federal employees; instead, they are independent contractors. Ultimately, the

United States cannot be held liable for the actions of any Pearl River County

employees. However, Hall contends that "[t]he Defendant United States and Rube

10

are held liable by the separate undelegated duties owed Plaintiff under the terms of

the IGA" (ECF No. 37). He contends that Rube had a duty to ensure proper

treatment as well as inspect the Pearl River County Jail to ensure it could care for

him.

Although Hall has not demonstrated that he has a viable claim against Rube,

the United States would still not be liable for her actions because of the FTCA's

discretionary function exception. This exception provides that "sovereign immunity

is not waived for discretionary acts and decisions." *McGuire v. United States*, 713

F.3d 807, 810 (5th Cir. 2013). In determining whether the exception applies, the

Court first asks "whether the act 'involv[es] an element of judgment or choice.'" If it

does, the Court "then ask[s] 'whether that judgment is of the kind that the

discretionary function exception was designed to shield.'" *Ashford v. United States*,

463 Fed. App'x 387, 391 (5th Cir. 2012) (quoting *United States v. Gaubert*, 499 U.S.

315, 322-23 (1991)). The first question is essentially whether the employee had to

adhere to specified conduct or whether the employee had a choice in what action to

take. *Id.* The second question essentially asks if the choice involves a policy

judgment. *Berkovitz v. United States*, 486 U.S. 531, 537-38 (1988).

The Federal Government "may contract" with state governments "[f]or the

purpose of providing suitable quarters for the safekeeping, care, and subsistence" of

federal prisoners. 18 U.S.C. § 4002. "Maintaining order and security in prison is the

type of policy-based decision that the discretionary function exception shields."

*Ashford*, 463 Fed. App'x at 395. As such, the decisions on where to place prisoners

are covered by the discretionary function exception. *Id.* The Fifth Circuit has also

held that the inquiry "is whether the policy specifically addresses how an official

must confront a given situation. . . . when the policy fails to prescribe 'specific

direction' as to what course of action an employee must follow, it generally fails to

establish a nondiscretionary duty." *Lopez v. United States Immigration & Customs

Enforcement*, 455 Fed. App'x 427, 433 (5th Cir. 2011) (quoting *Guile v. United

States*, 422 F.3d 221, 230-31 (5th Cir. 2005)). An agreement that provided the

USMS would inspect a state prison was not sufficiently specific, nor was an

agreement that the USMS would "ensure that all USMS prisoners receive medically

necessary health care services." *Id.* at 433-34.

This is essentially Hall's argument, and as such, it is without merit. The

statements in the IGA that Pearl River had to submit outside treatment requests to

the Federal Government for approval, the Federal Government was responsible for

the cost of approved outside medical treatment, and Pearl River was to allow

periodic inspections does not provide a sufficient "specific direction" to the Federal

Government. Therefore, sovereign immunity has not been waived, and this claim

must be dismissed.

III.    RA Claim against the USA

Hall seeks an additional two million dollars from the United States for

"failure to reasonably accommodate Plaintiff['s] disability in a discriminatory

manner" (ECF No. 1). 29 U.S.C. § 794 provides that a disabled individual shall not

"solely by reason of her or his disability, be excluded from the participation in, be

12

denied the benefits of, or be subjected to discrimination under any program or

activity receiving Federal financial assistance or under any program or activity

conducted by any Executive agency . . . ." Defendants contend that Hall may not

recover damages under the RA as the United States has not waived sovereign

immunity (ECF No. 30). In response, Hall cites to *Kemp v. Holder*, a case in which

the Fifth Circuit affirmed a grant of summary judgment for the defendants as the

plaintiff failed to prove he had a disability. 610 F.3d 231 (5th Cir. 2010). Hall does

not address the assertion of sovereign immunity.

Congress has not waived the Government's sovereign immunity from

monetary remedies for claims brought under Section 504 of the RA (29 U.S.C. §

794). *Pinkerton v. Spellings*, 529 F.3d 513, 517 (5th Cir. 2008). Therefore, the

United States is not liable for the two million dollars. As Hall is not seeking any

other relief on his RA claim, this claim should be dismissed.

IV.    Equal Protection and Due Process Claims against the USA

Hall also contends the United States is liable for another eight million dollars

in damages "[f]or intentional restriction of medical services guaranteed to other

detainee[s], who are not disabled, and gross treatment to a[ ] handicapped detainee,

pursuant to the Fourteenth Amendment 'Equal Protection Clause' and federally

through the Due Process Clause of the Fifth Amendment." This claim is ultimately

subsumed by the analysis of his *Bivens* claim against Rube and his FTCA and RA

claims against the United States, but even if it is not, Hall has not sufficiently

alleged denial of equal protection or due process. Hall has failed to state a claim upon which relief can be granted.

## RECOMMENDATION

Based on the above analysis, the undersigned recommends that Defendant United States and Defendant Rube's Motion for Summary Judgment be granted and Plaintiff Hall's Motion for Summary Judgment be denied.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Local Uniform Civil Rule 72(a)(3),

> After service of a copy of the magistrate judge's report and recommendations, each party has fourteen days to serve and file written objections to the report and recommendations. A party must file objections with the clerk of court and serve them upon the other parties and submit them to the assigned district judge. Within seven days of service of the objection, the opposing party or parties must either serve and file a response or notify the district judge that they do not intend to respond to the objection.

L.U. Civ. R. 72(a)(3); *see* 28 U.S.C. § 636(b)(1).

An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects. The District Judge need not consider frivolous, conclusive, or general objections. A party who fails to file written objections to the proposed findings, conclusions, and recommendations within fourteen (14) days of being served a copy shall be barred, except upon grounds of plain error, from attacking on appeal any proposed factual finding or legal conclusion adopted by the Court to which he did not object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

SIGNED, this the 25th day of July, 2018.

s/ John C. Gargiulo

JOHN C. GARGIULO
UNITED STATES MAGISTRATE JUDGE