IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**KENTORRE D. HALL**                                                      **PLAINTIFF**

v.                                    **CIVIL ACTION NO. 1:17-CV-42-JCG**

**UNITED STATES OF AMERICA, et al.**                      **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

BEFORE THE COURT is the Motion for Summary Judgment (ECF No. 84) filed by Defendants Pearl River County, Mississippi and Sheriff David Allison, and the Motion for Cross Summary Judgment (ECF No. 90) filed by Plaintiff Kentorre Hall. Plaintiff is proceeding *pro se* and *in forma pauperis*. He originally asserted claims pursuant to the Federal Tort Claims Act.; 42 U.S.C. § 1983; the Americans with Disabilities Act of 1990 (ADA); the Rehabilitation Act of 1973 (RA); and *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), naming the United States of America, United States Marshal Melondy Rube, Sherriff Allison in his official capacity, Pearl River County, David Kilgore,[1] and Unknown Nursing Staff as Defendants. However, his only remaining claims are against Sheriff Allison, Pearl River County, Kilgore, and the Unknown Nursing Staff.

## BACKGROUND

On February 24, 2017, Hall commenced this action against numerous defendants, challenging the medical treatment he received as a federal pretrial

---

[1] The Court notes that David Unknown, R.N. was originally named as a Defendant and is still listed on the docket. However, Plaintiff has clarified that David Unknown is David Kilgore (ECF No. 60).

detainee in the custody of the Lenoir Rowell Criminal Justice Center (Justice Center). Ultimately, he alleges that the Defendants should not have used a particular type of catheter and that catheter caused a urinary tract infection (UTI); the care he received caused his ulcers to worsen; and he received inadequate treatment daily, including care from individuals who were not licensed, improper and infrequent hygiene care, and improper wound care. However, some of Plaintiff's inadequate treatment claims overlap with his ADA and RA claims, which include allegations that he could not access bathroom facilities, the standard jail bunk prevented him from alleviating the pressure on his ulcers and he was not provided a special mattress, he did not have a panic button to call for help, there was no IV pole for medications, staff was not present at all hours to assist, the Justice Center did not have an ambulance, and there was no motorized wheelchair available.[2]

Plaintiff alleges that Sherriff Allison is liable under Section 1983 pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) for his inadequate medical care and for failure to protect. He alleges Pearl River County is also liable for his inadequate medical care under *Monell* and is liable for discrimination under the ADA and RA.[3] Plaintiff alleges that Kilgore, who has not been served, and the Unknown Nursing Staff, who have not been identified, are liable under state law for

---

[2] "The ADA is not violated by 'a prison's simply failing to attend to the medical needs of its disabled prisoners.'" *Nottingham v. Richardson*, 499 Fed. App'x 368, 377 (5th Cir. 2012) (quoting *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996)). At the omnibus hearing, Plaintiff indicated that the substance of his claim was that the Justice Center was incapable of caring for someone with his disability. Nevertheless, to the extent that Plaintiff contends that he was denied the benefits of the programs or activities at the Justice Center, the Court will consider his claims.
[3] Because "[t]he RA and the ADA are judged under the same legal standards, and the same remedies are available under both Acts," the Court finds it is unnecessary to distinguish between these claims.

2

malpractice, personal injury, and emotional distress.

Plaintiff, a quadriplegic since 2002, was arrested on December 17, 2013 for various drug and weapons charges. Because of the nature and seriousness of the charges, he was detained pretrial at the Justice Center. The United States Marshal Service (USMS) had an intergovernmental agreement (IGA) with the Justice Center at the time of Plaintiff's arrest.

Plaintiff's Complaint indicates he already had a "Stage IV decubitus ulcer" on his buttocks at the time of his arrest (ECF No. 1). He also had an "in/out" catheter, which required another person to assist him with emptying his bladder several times a day. According to an email between Kilgore and the USMS, in order to eliminate the need for assistance, prevent bladder infections, lower the risk of infections generally, and promote healing by keeping the area dry, Plaintiff had an indwelling (or Foley) catheter put in on December 19, 2013 (ECF No. 90-2). However, Plaintiff's mother was opposed to an indwelling catheter, believing it would cause life-threatening infections (ECF No. 1). Plaintiff was diagnosed with a urinary tract infection on January 2, 2014. Despite this infection, doctors did not remove his catheter. His medical records indicate that he still had an indwelling catheter on January 21, 2014, and on March 16, 2014. The records also indicate he tolerated insertion well (ECF No. 1-2).

Plaintiff also asserts that the inadequate medical care he received was responsible for his worsening ulcers. However, his medical records provide

---

*Kemp v. Holder*, 610 F.3d 231, 235 (5th Cir. 2010) (citing *Delano-Pyle v. Victoria Cty., Tex.*, 302 F.3d 567, 574 (5th Cir. 2002)).

numerous statements about the conditions of his ulcers. During a visit to the Highland Community Hospital on January 21, 2014 for a different purpose, his medical records indicate that the stage IV ulcer he had at the time of his arrest was still present, as was another stage II ulcer, but no debridement was needed, his condition was stable and improved, and he had a fair prognosis. On February 6, 2014, his records from Pearl River County Hospital indicate that his stage IV ulcer was much cleaner. On February 13, 2014, his records note that his ulcer was showing improvement. On March 10, 2014, Plaintiff had surgery to excise the stage IV ulcer. During his March 28, 2014 visit to the Highland Community Hospital, his doctor noted that he had been receiving treatment for his stage IV ulcer for at least six months and that he had a history with this ulcer. His doctor noted the wound was still clean and packed during this visit (ECF No. 1-2).

Additionally, Plaintiff's medical records from the jail include daily notes concerning the size of his ulcers, his medication, repositioning to relieve the pressure, his bowel movements, the draining of his catheter, and the hygiene care provided to him, among other observations. The notes reveal that Plaintiff denied any pain, discomfort, or needs on multiple occasions. He occasionally refused to allow the staff to transfer him from a chair to a bed, and on one occasion, he stated he would not follow orders (ECF No. 88-2). Nevertheless, he contends he received insufficient care from the nursing staff at the Justice Center.

On June 11, 2019, Sherriff Allison and Pearl River County filed a Motion for Summary Judgment (ECF No. 84). They allege that the statute of limitations has

expired; Plaintiff failed to exhaust administrative remedies; he has failed to state a claim under *Monell*, as he has not shown deliberate indifference or a policy of providing inadequate care; and he has not established the elements of an ADA claim. Instead of filing a separate response, Plaintiff filed a Motion for Cross Summary Judgment (ECF No. 90) which incorporates his response. He argues that the treatment was inadequate, he was prevented from exhausting his administrative remedies, and the statute of limitations was tolled because the Defendants' actions constituted continuing torts. Defendants filed a Response (ECF No. 92) to Plaintiff's Motion, but Plaintiff has not filed a reply.

## DISCUSSION

I. <u>Motions for Summary Judgment</u>

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[T]he nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

"A genuine dispute of material fact means that 'evidence is such that a

5

reasonable jury could return a verdict for the nonmoving party.'" *Royal v. CCC & R Tres Arboles, LLC*, 736 F.3d 396, 400 (5th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). If evidence presented by the nonmovant "'is merely colorable, or is not significantly probative,' summary judgement is appropriate." *Anderson*, 477 U.S. at 249 (internal citations omitted). In deciding whether summary judgment is appropriate, the Court views the evidence and inferences in the light most favorable to the nonmoving party. *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).

  A. <u>State Law Claims</u>

  In his Cross Motion for Summary Judgment (ECF No. 90), Plaintiff indicates that he seeks to voluntarily dismiss "all Mississippi state causes of action." Defendants do not object. Therefore, Plaintiff's state law claims will be dismissed without prejudice. The Court will not address them on the merits.

  B. <u>Exhaustion</u>

  Defendants argue that Plaintiff failed to exhaust his administrative remedies. Plaintiff claims that the administrative remedy program was unavailable to him. In general, exhaustion is a threshold issue. *See* 42 U.S.C. § 1997e(a). However, in the Order Setting Omnibus Hearing (ECF No. 64), the Court ordered that the parties file motions based on failure to exhaust at least fourteen days prior to the hearing. Although the omnibus hearing had to be reset (ECF Nos. 67 & 72), motions based on exhaustion should have been filed before the hearing. Because the Court finds that Plaintiff is not entitled to relief based on the other grounds raised

6

in Defendants' Motion, the issue regarding exhaustion is rendered moot.

    C. <u>Inadequate Medical Treatment</u>

        1. <u>Statute of Limitations</u>

"Section 1983 does not prescribe a statute of limitations. Instead, '[t]he statute of limitations for a suit brought under § 1983 is determined by the general statute of limitations governing personal injuries in the forum state.'" *Heilman v. City of Beaumont*, 638 Fed. App'x 363, 366 (5th Cir. 2016) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001)) (alteration in original). Mississippi has a three-year statute of limitations for personal injury claims. *Edmonds v. Oktibbeha Cty.*, 675 F.3d 911, 916 (5th Cir. 2012). Even though this Court looks to the state statute of limitations, "federal law governs when an action under § 1983 accrues." *Gartrell v. Gaylor*, 981 F.2d 254, 257 (5th Cir. 1993) (citing *Lavellee v. Listi*, 611 F.2d 1129, 1130 (5th Cir. 1980)). Such an action "accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action. The statute of limitations therefore begins to run when the plaintiff is in possession of the 'critical facts that he has been hurt and who has inflicted injury . . . .'" *Id.* (internal citations omitted).

Plaintiff's Complaint was filed on February 24, 2017. Although it was signed on January 31, 2017, the envelope indicates it was received by the post office on February 16, 2017 (ECF No. 1-3). Nevertheless, assuming Plaintiff mailed the Complaint on January 31, 2017, any claim arising before January 31, 2014 is barred by the statute of limitations. However, Plaintiff argues that Defendants'

7

actions constitute a continuing tort. Under the continuing tort doctrine, a claim "does not accrue until the tort has ceased." *Nottingham*, 499 Fed. App'x at 375 (citing *Lavellee*, 611 F.2d at 1132).

Plaintiff (through his mother) had complaints about the indwelling catheter from the moment it was ordered (ECF No. 1). He developed a UTI, which he contends was caused by the indwelling catheter, by January 2, 2014. Therefore, his claim concerning the catheter and the allegedly resulting UTI is time barred. With respect to his ulcers, Plaintiff alleges that his stage IV ulcer had deteriorated to the point of needing surgery on January 21, 2014 (ECF No. 1). The new stage II ulcer was also present at this time (ECF No. 1-2). As such, his claim concerning his ulcers is also time barred.

However, Plaintiff also alleges he received inadequate medical care while at the jail. Although Defendants argue that Plaintiff only alleges he received inadequate care on six dates, with a final date of February 19, 2014, the Court finds that Plaintiff makes allegations concerning his daily treatment, or alleged lack thereof, from the date of his arrest until the date he was transferred to a different facility. "[T]he allegation of a failure to provide needed and requested medical attention constitutes a continuing tort, which does not accrue until the date medical attention is provided." *Lavellee*, 611 F.2d at 1132. However, the Fifth Circuit has previously held that "each instance of potentially deliberate indifference ceased when [Plaintiff] received medical attention." *Nottingham*, 499 Fed. App'x at 375. Plaintiff's jail records provide daily nurse's notes indicating when he was bathed,

8

repositioned, or his wound cleaned. Nevertheless, because Plaintiff complains about the daily treatment he received, and at least some of his time at the Justice Center occurred within the applicable limitations period, the Court will address Plaintiff's medical treatment claim on the merits.

2. *Monell* Liability

The Eighth Amendment's protections against cruel and unusual punishment require prison officials to "provide humane conditions of confinement," including ensuring that inmates receive adequate medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Pretrial detainees, like Plaintiff, are also entitled to adequate medical care. *See Hare v. City of Corinth*, 74 F.3d 633, 648-49 (5th Cir. 1996). Only where prison officials exhibit "deliberate indifference" towards a "substantial risk of serious harm" will an Eighth Amendment violation be found. *Gobert v. Caldwell*, 463 F.3d 339, 345-46 (5th Cir. 2006) (citing *Farmer*, 511 U.S. at 834). "A showing of deliberate indifference requires the prisoner to submit evidence that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Id.* at 346 (quoting *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)). "Deliberate indifference is an extremely high standard to meet." *Id.*

Plaintiff is suing the Sherriff in his official capacity and Pearl River County. There is no allegation that these Defendants had any sort of medical training or knowledge. The treatment Plaintiff complains about was provided by Kilgore and

9

other staff at the Justice Center. "Section 1983 does not create supervisory or *respondeat superior* liability." *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002). However, Plaintiff alleges that Sherriff Allison and the County are liable under *Monell*, which provides that a local government is liable under § 1983 when the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." 436 U.S. at 694. This requires proof of "a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski*, 237 F.3d at 578 (citing *Monell*, 436 U.S. at 694).

Defendants allege that Plaintiff has not shown a constitutional violation because he has not shown deliberate indifference, nor has he shown an official policy or custom. Plaintiff alleges that the official policies include an eight-hour shift for the nursing staff, providing cursory care due to budgetary concerns, not transferring inmates to other facilities more capable of treating specific medical needs, and providing no medical equipment associated with quadriplegia. However, Plaintiff has not claimed the existence of any written policy.[4]

Therefore, he must show that the policy is "a widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) (quoting

---

[4] The IGA between Pearl River County and the USMS provided that the "Local Government shall not relocate a federal detainee from one facility under its control to another facility not described in this Agreement without the permission of the Federal Government." (ECF No. 29-1). Although this is a written policy, it is not a policy instituted by Pearl River County or Sherriff Allison. Plaintiff has made no allegations of any written policy established by these two Defendants.

10

*Piotrowski*, 237 F.3d at 579). However, he has not alleged any facts that show these alleged violations of his constitutional rights constituted a "custom." In fact, he has not even alleged that any other inmates suffered from inadequate care due to the hours of nursing staff, budgetary concerns, failure to transfer, or failure to provide particular medical equipment. *See Cook v. Louisiana Workforce, LLC.*, No. 16-00587-BAJ-RLB, 2017 WL 4322412, at *4 (M.D. La. Sept. 28, 2017) ("Plaintiff has not alleged facts sufficient to raise a plausible inference that either of these purported violations of Plaintiff's constitutional rights amounted to a custom or practice. For instance, Plaintiff has not claimed that any other inmates suffered from a similar practice . . ."). Therefore, because Plaintiff has only shown "isolated instances" involving himself, he has failed to show a custom that constitutes municipal policy. *Peterson*, 588 F.3d at 850-851 (citing *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989)).

Plaintiff also has not shown that he suffered a constitutional violation due to the alleged policies. In addition to regular care at the Justice Center, Plaintiff was repeatedly taken to hospitals and clinics for various procedures, including surgery. "Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference." *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995) (citing *Mendoza v. Lynaugh*, 989 F.2d 191, 193-95 (5th Cir. 1993)). Plaintiff's disagreement with his medical treatment does not rise to a constitutional violation. For example, although Plaintiff asserts that he needed a decubitus mattress and the air mattress provided by the Justice Center was

11

insufficient, the physician's orders from March 10, 2014, indicate that Plaintiff needed either an "anti-decub" mattress or an air mattress or eggcrate mattress (ECF No. 1-2). Therefore, the Justice Center complied with the doctor's orders. Plaintiff's allegations to the contrary are simply untrue. This is unlike the case in *Lawson v. Dallas County*, where the jail had official policies that included prohibiting foam mattresses, disregarding any hospital instructions that were contrary to jail policies, and prohibiting nurses from entering a cell or helping an inmate shower. 286 F.3d 257, 263-64 (5th Cir. 2002).

Finally, the nursing staff at the Justice Center provided daily notes concerning Plaintiff's care, including regular annotations that he had been bathed, his ulcers had been treated, he had been repositioned, and he was not in any pain. Plaintiff's merely makes an unsupported allegation that he was left to fend for himself. Plaintiff has not even attempted to contradict the representations in the daily notes that he regularly denied pain, discomfort, or present needs. Because he did not voice his complaints to the jail staff, they did not ignore his complaints. *Gobert*, 463 F.3d at 346 (quoting *Domino*, 239 F.3d at 756). The plethora of medical records belie any assertion that Plaintiff was refused treatment, and there is no evidence that Plaintiff was intentionally treated incorrectly. Plaintiff has not shown that any of the jail staff were deliberately indifferent. Therefore, neither Sherriff Allison or Pearl River County can be held liable under *Monell* for Plaintiff's medical treatment.

D. <u>Failure to Protect</u>

Plaintiff's failure to protect claim against Sherriff Allison is connected to his medical care claim, and it also fails because Plaintiff has not shown Sherriff Allison was deliberately indifferent. "To establish a failure-to-protect claim, a prisoner must show that [he] was 'incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to [his] need for protection." *Zamora v. Stephens*, 732 Fed. App'x 305, 306 (5th Cir. 2018) (quoting *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995)). An official "acts with deliberate indifference if he or she 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [he or she] must also draw the inference.'" *Id.* at 307 (quoting *Farmer*, 511 U.S. at 837) (alterations in original).

Although Plaintiff alleged at the omnibus hearing that Sherriff Allison "seen me laying there" and that Plaintiff wrote "cop-outs" to him (ECF No. 84-1), the record does not support a finding that Sherriff Allison knew of and disregarded an excessive risk to his health or safety. No "cop-out" is in the record. Merely seeing Plaintiff in the cell is not enough to show Sherriff Allison's knowledge of the risk, particularly when combined with the numerous nurse's notes stating that Plaintiff frequently indicated no pain, discomfort, or needs. Therefore, even viewing the evidence in the light most favorable to the Plaintiff, there is no evidence that Sherriff Allison was aware of facts showing a substantial risk of harm or that he drew the inference that Plaintiff faced a substantial risk of harm.

13

E. ADA/RA Claims

1. Statutes of Limitations

As with Plaintiff's medical treatment claims, ADA and RA claims accrue and the statute of limitations begins to run "when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Brockman v. Tex. Dep't of Criminal Justice*, 397 Fed. App'x 18, 21 (5th Cir. 2010) (quoting *Jackson v. Johnson*, 950 F.2d 263, 265 (5th Cir. 1992)). The statute of limitations for an ADA claim may be tolled by a continuing violation. *See Pagan-Negron v. Seguin Indep. Sch. Dist.*, 974 F. Supp. 2d 1020, 1033 (W.D. Tex. 2013). However, because Plaintiff's medical care claims are not governed by the ADA or RA, none of his claims in this section are subject to tolling for a continuing violation. "[I]f the discrimination alleged is solely the result of a single violation that occurred outside the statute of limitations, the later effect of this act does not constitute a continuing violation of the statute." *Hendrix v. Yazoo City*, 911 F.2d 1102, 1104 (5th Cir. 1990). The "key" to the inquiry "is whether the original discriminatory act had 'the degree of permanence that should trigger [a party's] awareness of and duty to assert his or her rights.'" *Id.* (quoting *Berry v. Board of Supervisors*, 715 F.2d 971, 981 (5th Cir. 1983)).

Plaintiff's ADA and RA claims concerns his inability to use certain facilities at the Justice Center. At the omnibus hearing, he mentioned the lack of ramps, medical showers, and a call button. His Complaint also stated that he was unable to use the bathroom facilities, he was not provided a wheelchair, and the Justice Center did not have its own ambulance. Given that Plaintiff arrived at the Justice

Center in December 2013, the lack of these desired accommodations should have been apparent to the Plaintiff within the first week, if not the first day. The lack of a private ambulance should have been apparent from Plaintiff's first visit to the hospital, which occurred more than three years before the filing of his Complaint. Therefore, these claims are not subject to the continuing violation doctrine. Because the lack of these accommodations had a "degree of permanence," Plaintiff should have been aware of the duty to assert his ADA and RA claims within three years. Because he did not do so, his claims are time barred.

2. Discrimination

Although the Court concludes that Plaintiff's ADA and RA claims are time barred, it will also address Defendant's arguments on the merits. To raise a claim under these Acts, a plaintiff must show "(1) that he has a qualifying disability; (2) that he is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) that such discrimination is by reason of his disability." *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011). Prison programs are within the scope of Title II of the ADA. *See Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998). Pearl River County alleges that Plaintiff has failed to satisfy the second prong, as he has not shown disparate treatment or a failure to accommodate.

Again, to the extent that Plaintiff's claims concern his medical treatment, his ADA and RA claims are without merit, such as his contention that he needed nursing staff present at all hours. To the extent that Plaintiff's claims are

cognizable under the ADA and RA, Defendants do not contest that Plaintiff had a qualifying disability. However, the prison was only required to "furnish *appropriate* auxiliary aids and services where necessary to afford individuals with disabilities . . . an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity conducted by a public entity." 28 C.F.R. § 35.160(b)(1) (emphasis added). However, the ADA only "provides a right to reasonable accommodation," not the Plaintiff's "preferred accommodation." *EEOC v. Agro Distribution, LLC*, 555 F.3d 462, 471 (5th Cir. 2009) (citing *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 457 (6th Cir. 2004)); *see also Stafford v. King*, No. 2:11-cv-242-KS-MTP, 2013 WL 4833863, at *6 (S.D. Miss. Sept. 11, 2013). Additionally, prison officials are afforded "deference in their determination of an appropriate accommodation." *Wells v. Thaler*, 460 Fed. App'x 303, 313 (5th Cir. 2012) (citing *Oliver*, 276 F.3d at 745).

In this case, Plaintiff does not allege with specificity each accommodation he sought; however, the record indicates he did in fact receive certain accommodations. For example, at the omnibus hearing, Plaintiff stated the Justice Center should have gotten his personal wheelchair from his home; instead the Justice Center employees found him "whatever wheelchair they had" (ECF No. 84-1). Because Plaintiff had use of a wheelchair, even if it was not his preferred wheelchair, Plaintiff received sufficient accommodations. With respect to the ramps Plaintiff contends should have been provided, it is unclear where these ramps should have been, but he indicated at the omnibus hearing that he spent time in the "fed parlor"

with other inmates. Plaintiff does not allege at any point that the lack of ramps prohibited him from getting around the facility. It is also clear that the Justice Center successfully arranged for ambulance transport when Plaintiff needed to be taken to outside medical appointments. Plaintiff's complaints about the inadequate bathroom facilities focus primarily on the fact that he was unable to use it himself. Nevertheless, as previously discussed, his medical records from the Justice Center include numerous notes about the hygiene provided by the staff (ECF No. 88-2). He has not shown that his care was inadequate.

The Court also finds that there is no evidence that Plaintiff's was discriminated against by reason of his disability. Nothing in the record indicates that Plaintiff's access to certain facilities or accommodations was denied because he is a quadriplegic or that he and other disabled prisoners were treated differently than non-disabled prisoners. *See Tuft v. Texas*, 410 Fed. App'x 770, 775 (5th Cir. 2011) (citing *Lightborn v. Cty. Of El Paso*, 118 F.3d 421, 428 (5th Cir. 1997)). Therefore, because Plaintiff received appropriate accommodations and because he has not shown he was discriminated against because of his disability, his ADA and RA claims, in addition to being time barred, must also fail on the merits.

II. <u>Claims against David Kilgore/David Unknown and John Doe Defendants</u>

To the extent that Plaintiff's voluntary dismissal of his state law claims does not encompass all of his claims against Kilgore and the Unknown Nursing Staff, his claims against them are subject to dismissal for failure to prosecute and failure to serve. Plaintiff originally named RN David Unknown, Jail Nursing Supervisor in

his official and individual capacity as a Defendant as well as the Unknown Nursing Staff. A request for waiver of service was sent to David Unknown on June 12, 2017; however, it was unsuccessful (ECF Nos. 13, 14, & 16). Plaintiff was also instructed that upon determining the proper names and addresses of the unknown defendants, he was to file a motion with the Court that provided their names (ECF No. 13). On September 1, 2017, Plaintiff filed a Motion to Amend his Complaint to join David Kilgore, Medical Administrator (ECF No. 24). It was unclear from the Motion whether Kilgore was David Unknown, but Plaintiff has since stated that Kilgore is David Unknown (ECF No. 60).

Plaintiff's Motion was granted on September 8, 2017, and a request for waiver of service was sent to Kilgore on the same day (ECF Nos. 25 & 26). This attempt was also unsuccessful (ECF No. 33). A summons was issued to Kilgore on May 11, 2018 (ECF No. 53). However, it was returned unexecuted on June 8, 2018, as Kilgore no longer resides at the address provided (ECF No. 55). To date, Kilgore has not been served. As Plaintiff has been remined, he, not the Court, has the duty to provide the information necessary to secure valid service. *See Rochon v. Dawson*, 828 F.2d 1107, 1110 (5th Cir. 1987) (an *in forma pauperis* plaintiff "may not remain silent and do nothing to effectuate . . . service"). Further, Plaintiff has not identified any other John Doe Defendants.

The Court has the authority to dismiss an action for a plaintiff's failure to prosecute under Federal Rule of Civil Procedure 41(b) and under its inherent authority to dismiss an action *sua sponte. See Link v. Wabash R.R. Co.*, 370 U.S.

626, 629-30 (1962); *McCullough v. Lynaugh*, 835 F.2d 1126, 1127 (5th Cir. 1988). The Court must be able to clear its calendars of cases that remain dormant because of the inaction or dilatoriness of the parties seeking relief, so as to achieve the orderly and expeditious disposition of cases. *Link*, 370 U.S. at 630. Such a sanction is necessary in order to prevent undue delays in the disposition of pending cases and to avoid congestion in the calendars of the Court. *Id.* at 629-30. As a general rule, dismissals under Federal Rule of Civil Procedure 41(b) are permitted only when "(1) there is a clear record of delay or contumacious conduct by the plaintiff, and (2) the district court has expressly determined that lesser sanctions would not prompt diligent prosecution, or the record shows that the district court employed lesser sanctions that proved to be futile." *Berry v. CIGNARSI-CIGNA*, 975 F.2d 1188, 1191 (5th Cir. 1992). Additionally, under Rule 4, a failure to serve a defendant "must" result in dismissal. Fed. R. Civ. P. 4(m).

On review, the Court finds a clear record of delay and contumacious conduct by Plaintiff with respect to Kilgore and the Unknown Nursing Staff. Plaintiff was ordered to provide the Court with Kilgore's address for service on or before August 28, 2018, and he was warned that failure to do so would subject his claims against Kilgore to dismissal (ECF No. 59). Numerous Court Orders have advised Plaintiff that failure to timely comply with an Order subjected this case to dismissal. These Orders also repeatedly reminded Plaintiff of his duty to prosecute (ECF Nos. 3, 5, 6, 11, 13, 59, & 64). He has taken no action with respect to Kilgore since clarifying he was David Unknown on August 20, 2018 and providing additional factual

allegations on August 24, 2018 (ECF No. 62). He has also not provided any information identifying the other unknown Defendants. Lesser sanctions than dismissal would not prompt diligent prosecution of these claims. All claims against Defendant David Kilgore/David Unknown and against the Unknown Nursing Staff will be dismissed without prejudice under Federal Rule of Civil Procedure 4(m) and 41(b) for Plaintiff's failure to provide addresses for service of process and his failure to prosecute and abide by numerous Orders of the Court.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the Defendants' Motion for Summary Judgment (ECF No. 84) is granted.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that the Plaintiff's Motion for Cross Summary Judgment (ECF No. 90) is denied.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that Plaintiff's inadequate medical treatment, failure to protect, ADA and RA claims against Defendants Pearl River County, Mississippi and Sheriff David Allison are dismissed with prejudice. His state law claims are dismissed without prejudice. Plaintiff's claims against Defendant David Kilgore, who is also David Unknown, and the John Doe Nursing Staff are dismissed without prejudice.

**SO ORDERED,** this the 16th day of October, 2019.

*s/ John C. Gargiulo*
JOHN C. GARGIULO
UNITED STATES MAGISTRATE JUDGE